250

25790. FLOYD *et al. v.* THE STATE.

DECIDED SEPTEMBER 18, 1936.

*B. E. Pierce, A. R. Williamson,* for plaintiff in error.
*George Hains, solicitor-general, E. J. Clower,* contra.

GUERRY, J. J. L. Floyd, A. H. Floyd, and G. E. Floyd were jointly indicted for the offense of burglary. They were tried together, and the jury returned a verdict finding them guilty of larceny from the house. Their motion for new trial was overruled, and a writ of error is prosecuted in this court to review that ruling. Since this writ of error was sued out, J. L. Floyd died. The evidence at the trial developed that T. K. Chance and his brother, Guy Chance, operated a general merchandising store at Alexander, Georgia, near which was situated a small seed-house owned by them and in which they had stored five or six tons of cottonseed. On January 21, 1935, they discovered that the lock had been broken on this house and from five to seven tons of cottonseed had been stolen therefrom. From their evidence, it was a week or possibly two weeks before the date of their discovery that the cottonseed had been stolen that they had last seen the cottonseed in the house. T. K. Chance testified that on January 15, at or about 8 o'clock p. m., a man, whom he later identified as G. E. Floyd, came to his store in a model A Ford coach, and made certain purchases. He became suspicious of Floyd, because of his demeanor, and took the license number of the car, in which Floyd was travel-

ing, which was Ga. 645E. He observed also that the car was black and had a "homemade iron hitch on the back." With Floyd was a companion, a man of smaller stature, whom Chance could not identify as one of the defendants. While G. E. Floyd was at the store, two men, whom Chance could not identify as any of the defendants, drove up in a model A Ford coupé, to purchase some gasoline, and drove off immediately after G. E. Floyd left, "like they were going to New York and had to get there by morning."

Guy Chance testified that on the next night, January 22, after they discovered the loss of their seed, he and Mr. Spivey kept watch over the seed-house from a small office in front of it; that about eleven o'clock a car approached and stopped about seventy-five yards south of the seed-house. It was a model A Ford coupé, with light reflectors on the headlight lamps. A man got out of the car with a seed shovel on his back, and darted behind the seed-house when another car approached down the road. This man had a companion who had a great bulk on his back, something like a tarpaulin. They tried the lock on McElmurray's seed-house, which was close by, and from which some seed had also been stolen about the same time as theirs; and finding the door locked, they went back to their car. In the meantime another car had driven up, a model A Ford coach, with a homemade rack on the back. They both immediately drove off at a fast pace. T. K. Chance identified the cars described by Guy Chance as the ones that visited their store on the night of January 15. Guy Chance was not able to identify any of the men in the cars that night. L. W. Colson, an employee of the State Automobile Registration Department, testified that tag number Ga. 645E was registered in the name of A. H. Floyd, upon a model A Ford coach. Mrs. Floyd testified that her son, G. E. Floyd, owned a Ford coupé. G. E. Floyd and A. H. Floyd are sons of J. L. Floyd. At the home of J. L. Floyd was found a seed-bin containing about four tons of cottonseed and a shovel owned by Chance Brothers, and used by them in the seed-house, which was in the seed-house at the time it was broken into, and which had been missing since the seed were taken, and a tarpaulin with a few seed on it. J. L. Floyd operated a small farm, raised only three bales of cotton in 1934, and sold the seed therefrom as he ginned the cotton. Between December 10, 1934, and January 23, 1935, G. E. Floyd

and J. L. Floyd sold on various dates about fourteen or fifteen tons of cottonseed to various concerns. They sold Buckeye Cotton-Oil Company about 9700 pounds in three lots, the first on December 29, the second on January 2, and the third on January 12. At each delivery a Ford coupé accompanied the truck to the Buckeye Cotton-Oil Company's place of business. On January 17, J. L. Floyd sold to the Planters Cotton-Oil Company, 5680 pounds of cottonseed, on January 18, 900 pounds, and on January 23, 1480 pounds. One of the checks issued to J. L. Floyd was indorsed by G. E. Floyd. A. H. Floyd made a statement to the jury, denying any connection with the theft of the cottonseed. G. E. Floyd made a statement in which he stated that he was a painter, and went about over Georgia and South Carolina, working for people fixing their furniture, for which work he was often paid in farm produce, including cottonseed; and that the seed sold by himself and his father was seed procured from this source. He did not produce any witness who had given him cottonseed in exchange for his work, but produced other witnesses who tended to corroborate his statement. A witness who drove the truck that delivered the seed testified: "I took three loads. I carried one load to Planters Oil Mill, and a few days later or a few weeks, I don't remember how long, I carried a load to the Buckeye Cotton-Oil Mill and another load to the Planters the same day. I don't know where he got the seed from. When I would carry cottonseed from his place I would empty his seed-house. I don't know when he would fill it up again. I don't think I hauled any, in probably a week apart. I would come back again and it would be filled up again. I never did haul any seed to Floyd's house itself." The foregoing are the substantial and most important facts developed at the trial. The circumstances were certainly sufficient for the jury to find G. E. Floyd guilty as alleged in the indictment. It is a finding which, under the evidence, no appellate court would be apt to interfere with. However, these circumstances are not so conclusive as to A. H. Floyd. The evidence undoubtedly shows the participation of members of his family in a criminal enterprise, and the use of his automobile by G. E. Floyd, and its return to the scene of the crime set out in the indictment; all of which might be sufficient to cause suspicion to be cast upon him. However, we do not think

that this measures up to the required degree of proof; and so we hold.

2, 3. Complaint is made that the court failed to charge the jury as to whether the explanation offered by the defendants "as to the possession of the cottonseed and shovel, allegedly stolen, was reasonable and satisfactory." It is contended that such failure to charge, even without a timely written request therefor, requires the grant of a new trial under the facts of this case, and under the ruling in *Morris* v. *State*, 5 *Ga. App.* 300 (63 S. E. 26); *Tarver* v. *State*, 95 *Ga.* 223(4) (21 S. E. 381); and *Gay* v. *State*, 35 *Ga. App.* 165 (132 S. E. 261). The principle of those decisions, that in a trial for burglary or larceny, "where the evidence upon which the State mainly relied, and without which there could have been no legal conviction, consisted of proof showing possession by the accused of goods which had been stolen from the premises burglariously entered, and there was an explanation by him of that possession which, if true, was consistent with his innocence, an entire failure by the court to submit to the jury the question whether or not that explanation was reasonable and satisfactory is cause for a new trial," is well recognized, but it has no application to the present case. There is a distinction between an admitted possession of stolen property and an explanation of such possession, which is consistent with innocence and reason, and a denial that the property possessed is in fact the property stolen. In the latter instance the real issue to be tried is the identity of the property. There is no explanation of the possession of stolen property, but there is a denial that the property possessed is stolen property; and in such case, the failure to charge in reference to the reasonableness of the explanation is not error. The court properly charged on the law of circumstantial evidence, and on the presumption of innocence, and the defendant's statement; and the exception here noted is without merit.

The court did not err in overruling the motion for new trial as to G. E. Floyd, but erred in not granting a new trial to A. H. Floyd.

*Judgment affirmed in part and reversed in part. Broyles, C. J., and MacIntyre, J., concur.*